UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DUNIA MARRONE,

                        Plaintiff,

              -against-

PLAINVIEW-OLD BETHPAGE SCHOOL
DISTRICT,

                        Defendant.
----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
22-CV-1519 (ARL)

**LINDSAY, Magistrate Judge:**

      Plaintiff, Dunia Marrone ("Plaintiff"), brings this action for national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") against Plainview-Old Bethpage School District ("Defendant" or the "District"). Before the Court, is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. ECF No. 29. For the reasons set forth below, Defendant's motion is granted.

## BACKGROUND

### I. Factual Background

    The following facts are drawn from the parties' Local Rule 56.1(a) Statements and are uncontested unless otherwise noted.

      Plaintiff Dunia Marrone has worked in the District as a Childcare Worker in its Aftercare Program since 2019. Def. Rule 56.1 Stmt. ¶ 8. According to the Complaint, Plaintiff is of Honduran descent. Compl. ¶ 1. At the same time, she also worked as a Teacher Aide in the Amityville school district. Def. Rule 56.1 Stmt. ¶ 9. Plaintiff originally applied for a position within the District as a Teacher Aide because she wanted a "better school district." *Id*. at ¶ 10. Plaintiff testified that the children in Plainview-

Old Bethpage are better behaved than in Amityville.  *Id*. at ¶ 12.  Plaintiff also testified that she prefers to work in Plainview because she "saw the different culture and how [her] personality and how joyful it was to work with a different type of children…."  *Id*. at ¶ 13.  Plaintiff testified that Amityville has "a lot of immigrants, psychological problems. A lot of Spanish with trauma."  *Id*. at ¶ 14.  She said she feels the Asians and White population in Plainview-Old Bethpage is an "easier population to work with."  *Id*. at ¶ 15.

Defendant Plainview-Old Bethpage Central School District is a school district located at 106 Washington Avenue, Plainview, New York 11803.  *Id*. at ¶ 1.  Dolores Espinosa is the District's Director of Pupil Personnel Services and is Hispanic.  *Id*. at ¶¶ 2, 3.  Jennifer Lott is the District's Assistant Director of Pupil Personnel Services.  *Id*. at ¶ 4.  Together, Ms. Espinosa and Ms. Lott managed and supervised the hiring process for the Special Education Teacher Aide positions at issue in this litigation.  *Id*. at ¶ 54.

The District employs various categories of Teacher Aides.  *Id*. at ¶ 16.  Teacher Aides assist the teachers in the performance of their teaching functions, and the position often requires particular skills or abilities.  *Id*. at ¶ 17.  Some typical duties of a Teacher Aide may include:

> a. Reading in a foreign language from prepared scripts for tape recording purposes or interpreting spoken language by signing;
> b. Assisting in overseeing technical operations of language laboratory equipment;
> c. Helping to set up science laboratory equipment, conducting experiments and performing limited review of student laboratory reports;
> d. Helping in technical preparation and production of television programs;
> e. Reading and playing records for children in lower grades;
> f. Providing piano, violin, or other musical accompaniment;
> g. Proctoring and helping conduct examinations; and
> h. Assisting teachers in correcting test papers and assignments, recording grades, maintaining files, and preparing statistical reports, as required.

*Id*. at ¶ 18.  In contrast, the Childcare Workers' responsibilities that Plaintiff performed in the District involve babysitting tasks like taking attendance, setting up snacks and games, helping with homework, cleaning, and supervising children.  *Id*. at ¶ 19.

The District provides a robust program of services to support its Special Education students.  *Id*. at ¶ 20.  To do so, the District employs Special Education Teacher Aides.  *Id*. at ¶ 21.  The work of the Special Education Teacher Aides is crucial to the development of Special Education students, and is often a mandated part of a students' Individualized Education Plan ("IEP").  *Id*. at ¶ 22.  The District employs Special Education Teacher Aides in classrooms, Teacher Aides with smaller groups of students, and 1:1 Teacher Aides in which the employee is assigned to work exclusively with a particular student with special needs.  *Id*. at ¶ 23.  It is important for the District to hire 1:1 Teacher Aides who are particularly suited to attending to the needs of the particular student.  *Id*. at ¶ 24.  It is also helpful for the Teacher Aides to understand IEPs, Behavior Intervention Plans ("BIP") and Applied Behavioral Analysis ("ABA") techniques.  *Id*. at ¶ 25.

Before Plaintiff applied for the October and November 2020 Teacher Aide positions at issue in this case, she applied, and was interviewed several times for Teacher Aide positions in 2019 and 2020.  *Id*. at ¶ 29.  Plaintiff and approximately 24 other candidates were interviewed for five positions prior to the two Teacher Aide positions at issue in this case.  *Id*. at ¶ 30.  Plaintiff's resumé, which she submitted to the District for each of the referenced positions, does not list any experience, training, or education related to ABA or Behavioral Analysis.  *Id*. at ¶ 34.  Additionally, Plaintiff expressed during an interview that behavioral analysis was not part of her job responsibilities.  *Id*. at

3

¶ 35.

In September 2020, the District canvassed for a 1:1 Special Education Teacher Aide position at the Stratford Road School. *Id*. at ¶ 40. The position involved working 1:1 with a child with attention and behavioral issues to help the child redirect and refocus. *Id*. at ¶ 41. Ms. Espinosa and Ms. Lott interviewed 11 candidates for this position in October 2020. *Id*. at ¶ 42. They interviewed Plaintiff on October 14, 2020. *Id*. at ¶ 43. During her interview, Ms. Espinosa asked candidates to tell their favorite story involving a child. *Id*. at ¶ 44. She was looking for candidates to tell stories about children with whom they worked in a school setting. *Id*. at ¶ 45. Defendant contends that Plaintiff relayed a story of her own children, while Plaintiff argues she relayed the story of another child that happened to be from Honduras. *Compare* Def. Rule 56.1 Stmt. ¶ 46; Pl. Res. To Def. Rule 56.1 Stmt. ¶ 46. According to Plaintiff's resume she also lacked experience with behavioral analysis. *Id*. at ¶ 47.

The District ultimately hired Hannah Scherer for this position. *Id*. at ¶ 48. Ms. Scherer was in the process of obtaining her Master's degree in Elementary Education and Special Education with a concentration in behavioral disorders. *Id*. at ¶ 49. Plaintiff acknowledged that enrollment in a Master's program "is very helpful" for dealing with Special Education students. *Id*. at ¶ 50. Ms. Scherer had already been working as a 1:1 Special Education Teacher Aide with students with disabilities in the District's TAG program. *Id*. at ¶ 52. Ms. Scherer also had experience as a Special Education Teacher Aide for students with disabilities using ABA methods, and she had daycare and childcare experience. *Id*. at ¶ 53. When asked about Scherer's qualifications, Plaintiff admitted that Ms. Scherer was more qualified for the position. *Id*. at ¶ 54. Rather,

Plaintiff testified it was "sad" that the position "would be a step down" for Ms. Scherer. *Id*. at ¶ 55.

In October 2020, the District canvassed for a 1:1 Special Education Teacher Aide position at the Stratford Road School. *Id*. at ¶ 57. This position was similar to the previous posted position in that the successful candidate would be assigned to a student who scored high for anxiety and withdrawal, depression, possible selective mutism, as well as attention issues. *Id*. at ¶ 58. Ms. Espinosa and Ms. Lott interviewed eight candidates for this position in November 2020. *Id*. at ¶ 59. Plaintiff applied for this position but was not interviewed. *Id*. at ¶ 60. Defendant contends that Dolores Espinosa informed Plaintiff that she had not performed well at the interviews. *Id*. at ¶ 69. Plaintiff disputes this contention "and adds that Ms. Espinosa told Plaintiff on one (1) occasion that Plaintiff did not perform well during an interview because Ms. Espinosa asked Plaintiff about responsibilities that did not apply to her position." Pl. Res. To Def. Rule 56.1 Stmt. ¶ 46.

The District hired Jennifer Spirakis Dziurka for this position. Def. Rule 56.1 Stmt. ¶ 61. Ms. Dziurka had significant experience working with Special Education students with ADD, ADHD, Autism Spectrum Disorders, Dyslexia, Cerebral Palsy, and Down Syndrome. *Id*. at ¶ 62. She also had training in Nonviolent Crisis Prevention Intervention ("CPI"), which is a helpful skill in supporting students with behavioral issues. *Id*. at ¶ 63. Ms. Dziurka worked previously as a Teaching Assistant in other schools and was a Teacher Aide working with Special Education students at Stratford Elementary. *Id*. at ¶ 64.

Plaintiff admitted that no one associated with the interview process for any of the

positions for which she interviewed in the District ever said anything about her being from Honduras, her national origin, or being Hispanic. *Id*. at ¶ 67. Plaintiff admitted that noone in connection with the interview process for any of these positions made any remarks or said anything to her that she believed was discriminatory. *Id*. at ¶ 68. Indeed, it would have violated the District's policy for Ms. Espinosa and Ms. Lott to consider a candidate's race, ethnicity, or national origin.[1]  *Id*. at ¶ 28.

## II.     Procedural History

Plaintiff filed her Complaint on March 21, 2022, asserting claims under Title VII as well as Section 1983, 42 U.S.C. § 1983.  ECF No. 1.  On May 16, 2022, Defendant filed a pre-motion conference requested addressed to District Judge Brown, arguing that Plaintiff's Section 1983 claim should be dismissed because Plaintiff failed to state a *Monell* claim against the District and the Plaintiff's Title VII claim must be limited to jobs Plaintiff applied for after June 11, 2020. ECF No. 7.  Judge Brown agreed with both contentions and dismissed those claims.  *See* ECF No. 18, Transcript of hearing on June 7, 2022.

On September 8, 2023, Defendant moved for summary judgment on Plaintiff's remaining claims arising out of jobs she applied for in October and November 2020.  ECF No. 21.  On October 10, 2023, the case was randomly reassigned to District Judge Choudhury.  The case was again reassigned on November 15, 2023.  The parties consented to the jurisdiction of this Court on November 16, 2023.  ECF No. 27.  This Court waived the requirement of a pre-motion

---

[1] The District has anti-discrimination policies related to hiring. *Id*. at ¶ 6.  The policy states that the Board of Education and its employees, when recruiting new employees and hiring personnel, will do so without regard to age, color, creed, disability, marital status, national origin, race, religion, sex, or any other status protected by federal or state law. *Id*. at ¶ 7.

6

conference and set a briefing schedule on Defendant's motion for summary judgment. The fully briefed motion was filed on February 21, 2024. ECF No. 29.

## DISCUSSION

### I. Standards of Law

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Puglisi v. Town of Hempstead*, No. 10 CV 1928, 2012 U.S. Dist. LEXIS 133281, 2012 WL 4172010, *6 (E.D.N.Y. Sept. 17, 2012) (quoting *In re Blackwood Assocs., L.L.P.,* 153 F.3d 61, 67 (2d Cir. 1998) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc*., 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc*., 95 F.3d 123, 129 (2d Cir. 1996).

The trial court's responsibility is "limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party may not rest upon conclusory allegations or denials but must set forth "concrete particulars" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co*., 751 F.2d 69, 77 (2d Cir. 1984) (quoting

7

*SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)); *Jamaica Ash & Rubbish v. Ferguson*, 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) ("there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim") (quoting *Celotex,* 477 U.S. at 322); *E.E.O.C. v. Mavis Discount Tire, Inc.,* 129 F. Supp. 3d 90, 102 (S.D.N.Y. 2015) ("the nonmoving party must 'set out specific facts showing a genuine issue for trial' using affidavits or otherwise, and cannot rely on the 'mere allegations or denials' contained in the pleadings). A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

However, "[t]he Second Circuit has 'explicitly cautioned district courts to use extra care when deciding whether to grant summary judgment [in employment discrimination cases] because the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication.'" *Greenberg v. State Univ. Hosp.-Downstate Med. Ctr.*, No. 15 CV 2343 PKC VMS, 2019 U.S. Dist. LEXIS 167956, 2019 WL 4752018, at *13 (E.D.N.Y. Sept. 29, 2019)(citing *Thompson v. Kaufman's Bakery, Inc.,* No. 03-CV-340 (WMS), 2005 U.S. Dist. LEXIS 22431, 2005 WL 643433, at *3 (W.D.N.Y. March 16, 2005)). Nevertheless, "summary judgment remains appropriate in discrimination cases, as 'the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation.'" *Singh v. New York State Dep't of Taxation & Fin.*, 911 F. Supp. 2d 223, 233 (W.D.N.Y. 2012) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).

## II.     Plaintiff's Discrimination Claims pursuant to Title VII

Plaintiff asserts claims for discrimination based upon her national origin against Defendant pursuant to Title VII.  Compl. ¶¶ 32-36.  Defendant seeks summary judgment on that claim, arguing that Plaintiff has failed to set forth facts suggesting an inference of discrimination, and even if Plaintiff had, Defendant has an unrebuttable, legitimate, non-discriminatory reasons for its hiring decisions.[2]  Def. Mem. at 1.

In response, Plaintiff contends that she has established an inference of discrimination because Espinosa stated that Defendant would hire the candidate with the most experience, however, Scherer was hired over Plaintiff and Plaintiff had more experience -- although she admittedly had fewer qualifications.  Pl. Mem at 10.  Similarly, Plaintiff argues that she has more experience that the candidate selected for the second position – Dziurka.  *Id.* According to Plaintiff, Defendant's contention that Plaintiff was not interviewed for the November 2020 position because of her prior poor interview performance is "at best inaccurate and taken out of context, and make clear that it is nothing more than pretext for discrimination." *Id*.  Specifically, Plaintiff argues that "Defendant vaguely claims that Marrone's interview responses lacked empathy, when she spoke at length about how rewarding she finds working with her students and watching them grow throughout the year. It claimed that Marrone said behavior intervention should not be a part of her job, when she was merely explaining that it was not part of her job

---

[2] Defendant also seeks costs and attorneys' fees.  Def. Mem. at 1.  This request is denied.  While a court may award attorneys' fees to prevailing defendants in employment discrimination cases, such awards are rare.  *Belton v. Borg & Ide Imaging, P.C.,* 585 F. Supp. 3d 323, 328 (W.D.N.Y. 2022).  In the Second Circuit, it is not the norm to award attorney's fees to prevailing defendants because of the "potential chilling effect" on plaintiffs who wish to vindicate their rights against those who violate the federal law.  *Robinson v. Town of Kent*, No. 11-cv-2875 (ER), 2012 U.S. Dist. LEXIS 102992 at *28-29 (S.D.N.Y. July 24, 2012) (citing *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994)).  District courts can award defendants attorney's fees only if they demonstrate that "plaintiff's action was frivolous, unreasonable, or without foundation." *Torcivia v. Suffolk Cty.,* 437 F. Supp. 3d 239, 248 (E.D.N.Y. 2020) (internal citations omitted). "A claim is frivolous 'when it lacks an arguable basis either in law or in fact.'" *Id*. (citing *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004)).  Defendant has not persuaded the Court that this action was frivolous.

duties at Amityville. Defendant inaccurately alleges that when asked to tell her favorite story involving a child, she told a story about her own children as opposed to a story about a student; a story that Espinosa said was 'lovely.'" Pl. Mem. at 11.

On a motion for summary judgment, claims of discrimination under Title VII are analyzed using the three-step burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 441 U.S. 792 (1973). Therefore, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell Douglas* framework and its presumptions and burdens disappear, and, thus, (3) the burden shifts back to the plaintiff to show that the employer's reason is pretextual and that it masks the employer's true discriminatory reason. *See Patterson v. City of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 180, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *see Gorzynski*, 596 F.3d at 107.

"To establish a prima facie case under Title VII . . . for a failure-to-hire claim, [Plaintiff] must prove that: '(1) [s]he is a member of a protected class, (2) [s]he was qualified for the job for which [s]he applied, (3) [s]he was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination.'" *Villetti v. Guidepoint Glob. LLC,* No. 21-2059-CV, 2022 U.S. App. LEXIS 18651, at *2, 2022 WL 2525662 (2d Cir.

10

July 7, 2022) (quoting *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010)). "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in [nation-origin based] degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to" the adverse employment action. *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (citation omitted); *see also Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (same).

To preclude summary judgment on a disparate treatment claim for race, color, ethnicity, and/or national origin discrimination, a plaintiff must raise a genuine question of material fact as to whether their race, color, ethnicity, or national origin was a "'substantial' or 'motivating' factor contributing to the employer's decision to take the [adverse] action." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 249, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (plurality opinion)). "Plaintiff's instinct or belief that [Defendants] were discriminating against her based on her race, color, ethnicity, or national origin—without more—cannot support a discrimination claim." *Sanders-Peay v. N.Y.C. Dep't of Educ.*, No. 20-CV-1115 (PKC) (VMS), 2024 U.S. Dist. LEXIS 152933 (E.D.N.Y. Aug. 26, 2024) (citing *Bobb v. Potter*, No. 04-CV-283 (FB) (LB), 2007 U.S. Dist. LEXIS 32726, 2007 WL 1300975, at *3 (E.D.N.Y. May 3, 2007) (holding that plaintiff's "gut feeling" that his supervisor's "treatment of him was based on race [was] not sufficient to create an inference of discrimination"); *Shabat v. Blue Cross Blue Shield of Rochester Area,* 925 F. Supp. 977, 988 (W.D.N.Y. 1996) (holding that "an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a

11

summary judgment motion" (quoting *Douglass v. United Servs. Auto. Ass'n,* 65 F.3d 452, 459 (5th Cir. 1995)) (internal quotation marks omitted))).

Plaintiff here argues that she was told the hiring decision would be made based upon experience, she believes she had more experience than the individual hired and therefore the reason she was not hired must be because of her national origin. Pl. Mem. at 10. Plaintiff makes this claim even though she acknowledges that no one associated with the interview process for any of the positions for which she interviewed in the District ever said anything about her being from Honduras, her national origin, or being Hispanic and that no one in connection with the interview process for any of these positions made any remarks or said anything to her that she believed was discriminatory. *Id*. at ¶¶ 67, 68. These bare conclusory statements of discriminatory intent do not support an inference of discrimination. *See, e.g. Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002) ("bare allegation [that defendant was motivated by plaintiff's protected membership], without any facts alleged in support, is insufficient to state a claim for intentional discrimination"); *Hill v. Bloomberg L.P.,* No. 14cv9809, 2016 U.S. Dist. LEXIS 54114, at *38, 2016 WL 1665599 (S.D.N.Y. Apr. 20, 2016) (granting summary judgment because plaintiff's "is a classic example of the faulty logic that plaintiffs often use in employment discrimination cases: 'I am a member of a protected class; something bad happened to me at work; it must have happened because I am a member of that protected class"); *Ochei v. The Mary Manning Walsh Nursing Home Co.*, 2011 U.S. Dist. LEXIS 20542, 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011) (the false syllogism, "I am (fill in the protected class of which the plaintiff is a member); something bad happened to me at work; therefore the bad thing happened because I am (fill in the protected class)" is insufficient to support any inference of discrimination) (quoting *Grillo v. N.Y. City Transit Auth*., 291 F.3d 231 (2d Cir. 2002)).

Plaintiff has not shown that her qualifications were so superior to those of Sherer and Dziurka that no reasonable person could have hired them over Plaintiff. Indeed, Plaintiff acknowledges that each of the successful candidates possessed qualifications which Plaintiff lacked, despite her experience. *See, e.g.,* Def. Rule 56.1 ¶¶ 52-55, 62-64. "Plaintiff's disagreement with the way in which the [Defendant] weighed [her] and [Sherer and Dziurka's] qualifications does not create an issue of material fact." *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 582 (S.D.N.Y. 2008); *see also Gilani v. Teneo, Inc.*, No. 20-CV-1785 (CS), 2021 U.S. Dist. LEXIS 147041, at *50, 2021 WL 3501330, (S.D.N.Y. Aug. 4, 2021) (subjective disagreement with defendants decision insufficient to create issue of fact); *Jimoh v. Ernst & Young*, 908 F. Supp. 220, 226 (S.D.N.Y.1996) ("As a matter of law, an employee's disagreement with an employer's business decision is insufficient to prove discriminatory conduct."). An employer has the right to decide how it will value the various qualifications different candidates bring to the table. *See Scaria v. Rubin*, 117 F.3d 652, 654-55 (2d Cir. 1997) (affirming grant of summary judgment in defendant's favor where defendant had chosen to hire a person who had less education but more relevant experience than plaintiff did). We must not "second-guess the employer's assessment of the importance of various qualifications, absent some evidence that the asserted weighing was pretextual." *Collette v. St. Luke's Roosevelt Hosp.,* 2002 U.S. Dist. LEXIS 18164, 2002 WL 31159103, at * 11 (S.D.N.Y. Sept. 26, 2002). Since Plaintiff fails to provide even a shred of evidence of discrimination beyond her own conclusion that the only basis she was not hired was discrimination there is no justification for the Court to question the integrity of the hiring process.

Further, the relevant inquiry is not simply who had the most experience. *See Patel v. City of N.Y.*, 699 F. App'x 67, 69 (2d Cir. 2017) (summary order) ("We have held . . . that greater

13

experience cannot alone establish that a candidate's qualifications are so superior to another's that the employer's hiring decision may be found to have been discriminatory"); *Shah v. MTA N.Y. City Transit*, 687 Fed. Appx. 32, 33 (2d Cir. 2017). (defendant "need not demonstrate that the selected candidates were more qualified than Plaintiff but rather that they were 'equally qualified'") (citing *Tex. Dep't of Cmty, Affs. v. Burdine*, 450 U.S. 248, 259, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) ("the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria")); *Brophy v. Chao*, No. 17-CV-9527 (CS), 2020 U.S. Dist. LEXIS 125806, 2020 WL 4040742, at *9 (S.D.N.Y. July 16, 2020) (fact that selected employees had less experience than plaintiff does not create an inference of discrimination where selected employee possess qualifications plaintiff lacked); *see also Moreno v. Town of Huntington*, 334 F. App'x 426, 428 (2d Cir. 2009) (summary order) (where candidate selected was "qualified," plaintiff's two additional years' experience at same employer insufficient to raise inference of discriminatory animus)).

Plaintiff also notes that she was told by several employees of the District that she was a good candidate, highly qualified and the position would be suitable for her. Pl. Mem. at 10. According to Plaintiff, in light of these comments the decision not to hire her must be discriminatory. This is simply not the law. *See, e.g., Meyer v. State of New York Off. of Mental Health,* 174 F. Supp. 3d 673, 693 (E.D.N.Y. 2016), aff'd sub nom. *Meyer v. New York State Off. of Mental Health,* 679 F. App'x 89 (2d Cir. 2017) (holding that an employer who told plaintiff that she was an "excellent candidate" did not establish an inference of discrimination because there still may be other more qualified candidates).

Even if Plaintiff were able to create an inference of discrimination, she has failed to demonstrate that Defendant's legitimate, nondiscriminatory reason for not hiring Plaintiff was pretextual. Plaintiff challenges Defendant's conclusions regarding her answers to questions posed

14

during the interview. However, Plaintiff's disagreement with the interviewers' assessment or opinions about her answers to their questions does nothing to further her claim that their evaluation was incorrect, let alone discriminatory. "Plaintiff cannot pick and choose which aspects of a hiring process are to be considered and which are not, and it is well settled that employers are allowed to use performance during an interview in making promotion decisions and in evaluating qualifications among candidates." *Brophy,* 2020 U.S. Dist. LEXIS 125806, 2020 WL 4040742, at *9; *see also Moy v. Perez*, 712 F. App'x 38, 42 (2d Cir. 2017) (summary order); *Byrnie,* 243 F.3d at 104 ("[T]here is nothing unlawful about an employer's basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview.") (internal quotation marks omitted). "Only where an employer's business decision is so implausible as to call into question its genuineness should th[e] Court conclude that a reasonable trier of fact could find that it is pretextual." *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 118 (2d Cir. 2010) (summary order). The Court does "not sit as a super-personnel department that reexamines an entity's business decisions." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).

Overall, "the plaintiff's conclusory allegations of discrimination and her own subjective evaluations that she was better qualified than her coworkers are insufficient to demonstrate discrimination." *Richetts v. Ashcroft*, No. 00-CV-1557, 2003 U.S. Dist. LEXIS 3878, 2003 WL 1212618, at *7 (S.D.N.Y. Mar. 17, 2003). Accordingly, Defendant's motion for summary

judgment is granted and Plaintiff's complaint is dismissed.

Dated: Central Islip, New York  **SO ORDERED:**
       September 20, 2024

                                                _____/s_____
                                                ARLENE R. LINDSAY
                                                United States Magistrate Judge